J. S. & C. A. MERRILL, Plaintiffs in Error, v. JOHN C. MELCHIOR, Defendant in Error.

1. STATUTES PENAL: CONSTRUCTION OF.—Penal statutes cannot be extended by construction, so as to bring within their provisions, cases not embraced in their plain letter. Dwarris on Stat. 736.
2. SLAVES: IMPORTED FOR MERCHANDISE: DUTY OF PURCHASER.—The act of 1822, . Hutch. Code, 573, in relation to the importation into this state, and sale of slaves as merchandise, does not impose on the purchaser of an imported slave, the ·duty of registering the certificate thereby provided for. The registration is required to be done by the seller after the sale, and his failure to do so, cannot affect any legal rights acquired by the purchaser. If the buyer require a production of the certificate before he purchases, and thereby ascertains its existence, he has done all the law requires of him to avoid its penalties, and to enable him to enforce any right secured to him by the contract.
3. CONTRACT, ILLEGAL: MUST BE PROVEN.—Every presumption of law is in favor of the legality of a contract, and it is incumbent on the party alleging its illegality, to show every thing necessary to render it so, though the proof be of a negative character ; hence, it is the duty of the seller, who seeks to avoid his contract of warranty, on the ground of a want of the certificate of character required by law, to show, by proof, that such certificate was not in existence at the time of the sale. Chit. on Con. 659; Williams v. East India Co., 3 East, 192.
4. SAME: CONSTRUCTION OF AS TO LEGALITY.—If a contract is susceptible of two interpretations, one legal and the other illegal, that interpretation shall be given to it which renders it valid. Chit. on Con. (6th Am. ed.) 659.
5. ATTACHMENT: FAILURE OF JURY TO ASSESS VALUE OF PROPERTY: HOW SUPPLIED.—Where property levied on by attachment is replevied, if the jury find for the plaintiff, but omit to assess the value of the property so replevied, as provided by law, the court may immediately empanel another jury to supply the omission ; and the exercise of this power is necessarily inherent in the court in furtherance of justice. Drane v. Hilzhiem, 13 S. & M. 337 ; 2 Tidd, Pr. 922.

IN error from the Circuit Court of Claiborne county. Hon. Stanhope Posey, judge.

John C. Melchior, the defendant in error, instituted suit in the Circuit Court of Claiborne county, by attachment against John S. Merrill and Charles A. Merrill, non-residents, for $1400, for damages occasioned by a breach of warranty of soundness in the sale of a slave by the Merrills to him. The attachment was levied

on two slaves, which were replevied by the defendants. The defendants appeared and pleaded the general issue. The cause was submitted to a jury, and the defence relied on was, that the sale of the slave, for whose unsoundness the action was brought, was illegal in this, that he was introduced into this state and sold by plaintiff, without the necessary certificate of character being registered as required by law. Plaintiff proved the unsoundness and warranty. The defendants proved that the slave was introduced into this state by them as merchandise, in the year 1853, and they then introduced the probate clerk of Claiborne county, where the sale took place, and proved by him that no certificate in regard to the character of the slave was on record in his office.

The court instructed the jury at the request of the plaintiff: First, that the law does not presume that any man violates its provisions; such violation must be proved. Second, the statute did not require Melchior to have a certificate respecting the slave recorded. That duty was devolved upon the Merrills alone, and in order that the jury should find for the defendants on the ground of illegality of the contract, they must be satisfied from the evidence, that the certificate required by law, was not in the possession of the Merrills, and did not exist. Third, if the Merrills had a certificate respecting the slave, such as was required by the law, that was sufficient to protect Melchior from the penalty of the statute, even if it was not recorded.

The court refused the following instruction asked for by defendants: "If the jury believe that the defendants imported the slave, which is the subject of this suit, into this state, from the State of Tennessee, in the year 1853, as merchandise, or for sale, and in pursuance of the purpose for which he was introduced sold said slave to the plaintiff, in the county of Claiborne in this state, without having obtained the certificates required by the fourth section of the act of June 18th, 1822, or without having recorded such certificates in the office of the Clerk of the Probate Court of said county, either prior to or since the making of such sale, the warranty of said slave was void, and they should find for the defendants." The defendants excepted to the instruction, and the jury

found for the defendants $1553.53, but failed to assess the value of the two slaves attached.

The plaintiff then asked for another jury, to assess the value of the said slaves, which was accordingly done, and judgment rendered on said verdict. To this action of the court, in empanelling the jury, &c., the defendants also excepted. Defendants sued out this writ of error.

*H. T. Ellett*, for plaintiffs in error.

The 3d, 4th, 5th, 6th, and 7th, sections of the act of June 18th, 1822, (Hutch. Code, 512, 513,) were revived by the act of March 5th, 1846, Pamphlet Acts, page 243, (omitted from Hutch. Code.)

By sect. 4, it is declared to be unlawful to import slaves into this state as merchandise, without the certificates therein required.

By sect. 5, it is made the duty of any person selling any slave brought into this state as merchandise, to cause such certificates to be registered in the county where the slave shall be sold.

And by sect. 6, it is provided, that if any person shall sell *or purchase* any slave without having complied with the provisions of this act, he shall pay the penalty thereby imposed. This section is somewhat awkwardly worded, but its plain meaning is, "if any person shall sell or purchase any slave, brought into the state for sale, without the provisions of this act having been complied with."

The act is one of public policy, designed to protect the community against slaves of dangerous character, and it is made as much the duty of the purchaser, as of the seller, to guard *this* policy, and shield it from violation. The question of the character of imported slaves, is not left to be arranged between the seller and purchaser in private, but for the safety of the community, a public record is required, to which all may resort for information; and this cannot be waived by the parties. The purchaser, being a citizen of the state, is more bound to vindicate and observe this policy than is an itinerant trader; he is equally guilty, in case of a violation of the law, and is subject to the same punishment. He is not allowed even to wink at a violation of the law by the seller.

In *Collins* v. *M'Large*, 6 S. & M. 128, it was decided, that where the sale was void, the purchaser could not maintain an action on

Merrill v. Melchior.

the covenant of warranty. That case arose under the constitution, which, in its terms, only prohibited the introduction of slaves with intent to sell them. But here it is much stronger, for the act goes on to impose a penalty both upon the seller and purchaser.

The certificates must not only be obtained, but they must be registered: without the latter provision, the former would be useless. It provides for the means, and the only practicable means, of proving a non-compliance with the first provision: without it no person could safely prosecute for the penalty, for it would be impossible to prove that the certificates had not been obtained. And the purchaser is specially required by the law to see that its requirements have been complied with.

If, upon the proof contained in this record, the seller could not have recovered the price, had the sale been made on a credit, it will follow that the purchaser cannot recover upon the warranty of soundness. *Wooten* v. *Miller*, 7 S. & M. 385; for if the sale was against law, and against public policy, and therefore void, it was void in toto, and neither party can maintain an action upon the contract. The law will not help those who violate it, but will leave them where it finds them. *Hoover* v. *Pierce*, 27 Miss. R. 13, 23.

That the seller could not maintain an action for the price in a case like the present, is a position fully within the principles of the cases of *Green* v. *Robinson*, 5 How. 103; *Glidewell* v. *Hite*, 5 Ib. 112; *Brien* v. *Williamson*, 7 How. 29, 30, 31.

The authorities on which those cases were decided, are more pointedly applicable to the present case than to the subject there discussed. They fully show that the sale is void, though the act required to be done was the duty of the seller only, and where the purchaser, impliedly at least, waived its performance. A few of them will be specially referred to.

*Bensley* v. *Bignold*, 5 B. & A. 335; 7 Eng. Com. Law R. 121. The statute 39 Geo. 3, required every printer to print his name on all books published by him, and imposed a penalty for failure. Held, that a printer could not recover for work and labor done, where he had failed to comply with this requirement.

*Little* v. *Poole*, 9 B. & C. 192; 17 Eng. Com. Law R. 335. The 47 Geo. 3, required a person selling coal from carts, to de-

liver a ticket containing the name of the meter, under a penalty. Held, that where the ticket omitted the name of the meter, the seller could not recover.

*Forster* v. *Taylor*, 5 B. & A. 887 ; 27 Eng. Com. Law R. 230. The 36 Geo. 3, imposed a penalty upon a farmer or dairyman for packing butter in a vessel not marked and branded as required by the act. Held, that a farmer could not recover the price of butter sold by him in firkins not marked as required.

*Billard* v. *Hayden*, 2 Carr. & Payne, 472 ; 12 Eng. Com. Law R. 222. The importation of foreign silks being prohibited, a contract for the sale of such silks, made after their importation, is void.

*Law* v. *Hodgson*, 2 Campb. N. P. R. 147 ; 11 East, 300. The statute forbade the making of bricks for sale, except of certain dimensions, under a penalty. Held, that the price of bricks sold, under the prescribed size, could not be recovered.

The authority of this case, and of the reasoning upon which it proceeds, are expressly recognized and approved in the cases of *Green* v. *Robinson*, and *Glidewell* v. *Hite*.

The case of *Wheeler* v. *Russell*, 17 Mass. 258, is precisely like *Law* v. *Hodgson*, except that in *Wheeler* v. *Russell*, there was a penalty on the *buyer* as well as the *seller*.

In all these cases, though a penalty was imposed by the statute, the court held the contracts void—the acts being designed *for the protection of the public* against frauds. The reason applies with infinitely greater force to a case like the present, where the very safety of the community itself, is the object to be protected.

Perhaps no principle of the common law is more fully and clearly settled, by a longer and more unbroken chain of decisions, than the one on which we rely. A reference to authorities to support it, would, perhaps, hardly be necessary at this day, but for the case of *Rowan* v. *Runnels*, 12 How. U. S. R. 97.

This case, no doubt, owes its existence to the determined hostility of that court to the enforcement of our policy, in regard to the introduction of slaves. It professes to make a new rule on this subject ; and without adverting to the cases so clearly establishing the contrary doctrine, proceeds to announce the dogma, that where the doing of an act is prohibited under a penalty, the

question whether the act done is void or valid, is one of *legislative intention* merely; and that unless there is an expression of the legislative intent not only to punish the act, but also to make it void, it must be held valid. And then the doctrine is asserted, that if the making of a contract be forbidden under a penalty, and nothing is said expressly to declare the contract void, it is to be taken as equivalent to an express declaration that the contract is intended to be valid and lawful, and the parties only make themselves liable to the penalty.

This decision wholly ignores the universal principle, that a contract in violation of law or public policy, is void; and holds, substantially, that there must be an express declaration in the statute to the contrary, otherwise such contracts are valid—at least in cases that are punishable criminally.

It puts the making of contracts, that are deemed so destructive of the public safety and sound policy as to require to be visited with punishment, upon a better footing than those of lesser evil, which are merely prohibited, expressly or by implication, without a direct penalty.

It is believed that the law of this state is settled otherwise, and that the court will not discard all the other authorities, to adopt the doctrine of the Supreme Court.

If the sale was void, then the law will not help either party. If the seller could not have recovered the price, then, according to the case of *Collins* v. *McLarge*, the purchaser cannot recover on the warranty.

2. There is another point that is fatal to this judgment. The court erred in ordering a writ of inquiry, after trial and verdict, and on a subsequent day of the term to assess the value of the slaves attached.

Before the act of 1854, p. 88, § 2, the plaintiff could not have a judgment in the attachment suit against the sureties in the *replevin* bond. It is purely a statutory proceeding, unknown to the common law, and must be governed by the statute. A peculiar remedy is given against the surety, who is not a party to the suit; and it must be pursued at the time and in the manner pointed out by the statute. The surety is bound to be present at the trial,

with his proof as to the value of the property replevied, and if the plaintiff fails to offer any proof on that subject, and to ask a verdict, he has a right to depart, safe from any further proceeding, until he shall be brought in to answer in due course of law.

The statute is plain and explicit: " *The jury trying the issue between the parties,*" shall assess the value of the property replevied; and it goes on to provide, that if judgment *by default* shall be rendered, then " the court shall award a writ of inquiry."

The cases in which the court has allowed a writ of inquiry, to wit, in claimant cases, are no authority for this case; for, in claimant cases " the issue shall be tried and governed by the same rules which regulate and govern the trial of an issue in an action of *detinue.*" Hutch. Code, 912, art. 8, § 3. And, " if, in *detinue*, the verdict shall omit price or value, the court may, at any time, award a writ of inquiry to ascertain the same." Hutch. Code, 849, § 93.

This provision is not extended to proceedings in attachment, but the contrary is expressly provided, in the section above quoted from the act of 1854.

As the proceeding is purely statutory, the practice in *detinue* is not applicable, unless expressly so provided.

On both points, therefore, it is submitted, the judgment should be reversed.


*W. S. Wilson,* for defendant in error.

This was a suit in attachment brought under a late statute, in the Claiborne Circuit Court, to recover damages for the breach of warranty of the soundness of a slave, sold by plaintiffs in error to defendant. The proof tended to show, that the slave was brought by the Merrills from the state of Tennessee, where they reside, and sold to Melchior, a citizen of Mississippi.

The breach of warranty was clearly proved; and the defence made, and now relied on for a reversal of the judgment, was, that the contract was itself illegal, because of a non-compliance with the provisions of the statute. Hutch. Dig. 513, §§ 4, 5, 6. The only evidence, however, offered to show that the law had been violated, was that given by the probate clerk, who proved that no

certificate respecting the slave sold, in this instance had been registered in his office.

In the case of *Drew* v. *McLendon*, this court lately decided, that in a suit by a slave-dealer, for the price of a slave sold, a plea that the statute referred to had been violated, furnished a good answer to the action, contrary to the decision in *Harris* v. *Reynolds*, 12 How. S. C. R. 79.

It is due to the learned judge who tried this cause, to say, that he expressly disavowed the authority of the case of *Harris* v. *Reynolds*.

Accordingly, he refused, at the instance of the plaintiff, to instruct the jury, that "if they believed, from the evidence, that the slave bought by plaintiff from defendants, was brought into this state for sale, the contract of warranty was not void, if the certificate required by the statute did not exist, or was not registered."

I will proceed to state the grounds on which the charges given by the Circuit Court were rested, that led to a judgment for the plaintiff, and do confidently submit, that they should now be held sufficient to sustain that judgment.

The court will observe that sect. 4, of the statute, requires the *party bringing* the slave into this state for sale, to procure a certificate of certain facts, duly authenticated.

By sect. 5, the *seller*, when he shall *sell* a slave, is required to have the certificate registered in the court of the county where the slave is *first sold*. And *he* is to make oath to the truth of the certificate.

Thus far no duties are required of the purchaser, nor is his name mentioned.

But in sect. 6, it is provided that if any person shall *sell or purchase*, without a compliance with the provisions of the act, he shall pay $100, &c.

Inasmuch as the certificate is not required to be registered until *after* the sale, and that, too, by the *seller*, who alone can take the oath, it would seem most manifest, that in no case can the buyer be put in default, except by showing, that he bought without knowing that the seller had the certificate.

Now, the only evidence offered to show that the law had been violated, was that given by the probate clerk, that no certificate had been registered in his office. But this only proved that the Merrills had violated that part of the law which required them to have the certificate registered. And in a *qui tam* action under the statute, the evidence would have been sufficient to justify a recovery against them of the penalty.

Surely, though an action against Melchior for the penalty, would have failed upon such evidence—for he would have answered it, and successfully—"the law did not require me to have,the registry made: this was to be done by the seller *after the sale;* and he was also required to make oath to certain facts, of which I had, and could have had, no knowledge. To show, therefore, that the certificate was not· recorded, is only to show that the seller neglected that part of his duty. It does not show that *the certificate did not exist.* For that alone—for buying a slave from one who had not the certificate—could I be made liable to pay the penalty given by the statute ?"

We urged, therefore, at the trial—and respectfully do so now—that in order to show that the contract was illegal, it was not sufficient merely to show that something was not done by the seller, which he ought to have done *after* the contract was made, and thus affect it *by relation.* The defendants were required to go further, and show that the certificate did not exist; for it was only by the act of buying without such certificate, that Melchior could be placed *in delicto.* For, let it be remembered that the contract was good, if the certificate was not recorded. The registration was to be made *after* the sale, "in the county where the slave is *first sold.*" To have shown, therefore, that the registration had not been made, was not to show that *the certificate did not exist.*

That the latter was required, although it may have devolved upon the defendants the proof of a negative, will be established by the most decisive authorities. Chitty on Contracts, chapter iv. of Illegal Contracts, 514, 515, says: "But the presumption of law is in favor of a contract. We have already seen, that if susceptible of two meanings, one legal, the other illegal, that interpretation shall be put upon the agreement which will

support and give it operation. Illegality of consideration shall not be *inferred.* It is for the party who takes the objection, to prove it clearly, although it be thereby thrown upon him to establish a *negative.*" And he proceeds to cite cases illustrating this doctrine.

Greenleaf, in his work on Evidence, chap. 3, p. 95, § 30, is no less emphatic in his statement of the law: "That where a negative allegation involves a charge of criminal neglect of duty, or fraud, or the wrongful violation of actual lawful possession of property, the party making the allegation must prove it; for in these cases the presumption of law, which is always in favor of innocence and quiet possession, is in favor of the party charged."

So, also, at page 42, § 35. That the presumption of innocence is so strong, that even where the guilt can be established only by proving a negative, that negative must be proved.

Nor let it be supposed that this rule applies only to criminal prosecutions.. The cases cited by the authors quoted at the places referred to, prove that it obtains alike in civil and criminal cases.

Take, for example, the leading case in 3 East, 192, (104,) which was a civil suit, in which the plaintiff sued the defendant for putting a dangerous commodity on board his chartered ship, *without giving due notice.* He was required to prove this negative averment.

Lord Ellenborough, in giving judgment, states the rule of law to be, " that where any act is required to be done on the one part, so that the party neglecting it would be guilty of a criminal neglect of duty in not having done it, the law presumes the affirmative, and throws the burden of proving the contrary—that is, in such case, of proving a negative, on the other side." He takes pains to show that this rule applies to civil suits. That it does, is abundantly shown also by the other cases cited by Chitty, and Professor Greenleaf. See, also, Cowen & Hill, Phil. Ev. 3rd vol. (1st of notes), Vancolt's edition, note 285, p. 461, (298,) and note 343, p. 648; 19 Johns. 346.

Nor can the Merrills complain of any hardship in this rule. First, because. it tended as well to exculpate them from a criminal charge, as it did to exculpate Melchior; and secondly, because,

as Lord Mansfield says, in Cowp. R. 343, "The objection that a contract is illegal or immoral, sounds, at all times, very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff—by accident, if I may so say."

Upon the authorities then, I ask, was not the circuit judge right in his charge to the jury, "that the law does not presume that any man violates its provisions?" "that the statute did not require Melchior (the plaintiff,) to have a certificate recorded; that the duty of doing so, was devolved upon the sellers alone; that the jury must be satisfied, before they could find the contract illegal; that the certificate required by law was not in the possession of the Merrills, and did not exist;" and "that if they had such a certificate, it was sufficient to protect Melchior from the penalty of the statute, if it was not recorded."

Surely, if the authorities cited are to be relied on, the charges were correct in principle, unless the plaintiffs in error can satisfy the court that a contract valid at the time when made, could be avoided by their own *ex post facto* failure to have a certificate recorded.

This, the plaintiffs in error were driven to contend for, because their charge, which was refused, proposed that the court should declare the contract to have been illegal, if the certificate was not procured as the statute required; *or*, if it was not recorded either "prior to or *since* the making of such sale."

But I have shown, that by the express language of the statute, the certificate was not to be recorded until *after* the sale, "in the county where the slave is *first sold*." That the Merrills *alone* were required to have the registration made. That Melchior, the plaintiff, could not have done this, because he could not have taken the oath prescribed.

The question then, is, can Melchior, the plaintiff, be put *in delicto*, so as to be disabled from enforcing the contract, because the Merrills, after the contract was made, failed to perform a duty

which the law required of them? It is sufficient but to state it, to have a negative answer.

Mr. Smith, (1 Lead. Cas. 4th Am. edit. 426, note to *Collins* v. *Blantern*,) says : " A contract will not become illegal by relation, which was not so when made, although the party making it was bound by law, under a penalty, to do some subsequent act, which has been neglected." 6 M. & W. 270.

It is, therefore, not without confidence, submitted, that the judgment of the Circuit Court was right. That the fact proved, to wit: that no certificate respecting the slave had been recorded, only proved that *after the sale*, the Merrills, themselves, had been guilty of a criminal neglect of duty, in the consequences of which Melchior was not involved. That it did not prove that the certificate *did not exist*, which, although a negative averment, it was incumbent on defendants to prove, inasmuch as it contained a charge against the plaintiff, of having violated a penal statute, and of having been guilty of a " criminal neglect of duty."

2. Another exception was taken to the action of the Circuit Court, in awarding a writ of inquiry, to assess the value of the property seised under the attachment, which had been replevied.

By the second section of the act of 1854, p. 88, it is provided, that, in cases of attachment, where the property seised has been replevied, the jury, if they find for the plaintiff, shall assess its value, and that judgment shall be entered against the defendant and his sureties, accordingly as the value assessed may equal in full that of the amount by the verdict, found to be due to the plaintiff.

In this case, the jury who tried the cause did not assess the value of the slaves attached, and a writ of inquiry was awarded for the purpose.

By the Statute of Amendments, (Hutch. Dig. 849,) it is provided, that if in detinue, the verdict shall omit price or value, the court may at any time award a writ of inquiry to ascertain the same. Subsequently the Statute of Replevin was passed, requiring an assessment of value, as in the action of *detinue*.

In *Dreme* v. *Hilzheim*, 13 S. & M. 337, which was a case in replevin, the jury had not assessed the value of each chattel as

required by law. But this court said that the provision as to detinue, would apply in replevin where the value was not assessed, inasmuch as it was a remedial statute of amendments, the principle of which would govern in like cases arising under a statute subsequently enacted.

Accordingly, the court determined that the cause should be remanded, with directions to empanel a jury to supply the omission of the original verdict. The analogy is perfect, between this case and that cited. The principle settled must therefore govern the present case. For it is idle to say that the Circuit Court erred in doing at the first, what this court would remand the cause and compel it to do.

Handy, J., delivered the opinion of the court.

This was an action instituted by attachment in Claiborne Circuit Court, to recover damages for a breach of warranty of soundness of a slave brought into this state for sale by the plaintiffs in error, and sold by them to the defendant in error.

The breach of the warranty is not contested; but the defence in the court below was rested mainly on the ground that the slave, having been imported into this state for sale by the vendors, was sold by them to the defendant in error, without having registered with the clerk of the Probate Court of the county, where the sale took place, a certificate, under the provisions of the fourth section of the act of 1822, (Hutch. Code, 513,) made by persons in the county from which the slave was brought, stating that the slave had not been guilty or convicted of murder, burglary, arson or other felony: that by the fifth and sixth sections of the same act, such certificate was required to be so registered by the seller, he previously making oath that he believes the contents of the certificate to be true: and any person selling or purchasing any slave without having complied with these provisions was subjected to a penalty of one hundred dollars. It was proved by the probate clerk of Claiborne county, that no such certificate was registered in his office by the vendors of this slave. And upon these facts the defence was, that the contract of purchase between the plaintiff and defendants was in violation of public policy and void under

the provisions of this statute, and that no right of action could accrue to either of the parties in consequence of it.

It is admitted that the failure to register the certificate was a violation of the statute on the part of the vendor; but it is insisted, on behalf of the plaintiff in error, that it was also the duty of the purchaser, under the statute, to have the certificate registered, and that his purchase of the slave, without that, was a violation of the policy of the statute and illegal, and that no right of action could be founded on the contract.

The question is thus presented, whether the statute makes it *the duty of the purchaser, before purchasing a slave* brought here for sale, to have the required certificate, registered; for if that be incumbent upon him, his failure to cause the act to be done, places him *in pari delicto* with the seller, and he can found no right upon his violation of the law. In determining this question, we have first to consider the provisions of the statute, and its peculiar phraseology.

The fourth section makes it unlawful for any person to import into this state any slave as merchandise, without having obtained a certificate such as is above stated, as to the character of such slave.

The fifth section provides, that " any person who shall sell any slave brought into this state as merchandise, shall cause to be registered with the registrar of the Orphans' Court of the county, where such slave is first sold, every certificate as aforesaid, the seller previously swearing that he believes the contents of such certificate to be just and true; which oath said registrar is authorized and required to administer," &c.

The sixth section provides, that "if any person shall sell or purchase any slave or slaves without having complied with the provisions of this act, he, she or they so offending, shall pay the sum of one hundred dollars for every slave so sold or purchased," &c.

It was manifestly the policy of these enactments to prohibit both the sale by traders, and the purchase by our citizens of slaves imported here for sale, unless accompanied by the certificate of character deemed proper in order to their safe admission among the slave population of the state. But the peculiar language of

the provisions renders it difficult to ascertain what is required to be done by the purchaser, and when he becomes subject to the penalty prescribed, and the disabilities arising therefrom.

The fifth section requires, that any *person who shall sell* any such slave, shall have the certificate registered in the county where the slave is first sold, first making oath as to the truth of the certificate. A positive duty is thus enjoined upon the seller; one that, from its nature, can be performed by him only, and which he is only required to perform after he shall sell the slaves; for if he does not make a sale of the slave, he is not required to register the certificate in any particular county. The mere offering the slave for sale does not oblige him to make the registry, nor is he compelled to do so pending a treaty for a sale, nor at any other time except after he shall have sold the slave; for until then, the slave is not introduced among the slave population of the state, and the mischief intended to be prevented has not occurred. And it is clear that he could not be prosecuted for the penalty under the statute, if he made the registry after the sale, and before any injury could arise from the introduction and sale of the slave.

Thus far the statute appears to be plain. But the sixth section prohibits any person from selling or *purchasing* any slave, "*without having complied with the provisions of this act.*" It is to be observed, that the act no where requires anything to be done by the purchaser. Nor could he perform the acts enjoined upon the seller, and which required his personal oath. There is no specific duty enjoined upon the purchaser to be "complied with by him." It cannot justly be taken, by intendment, that he shall see that the certificate is registered before he completes the purchase, because that would be to charge him with a duty which is not enjoined upon him by the plain terms of the act, and to enlarge the scope of the act so as to bring him, by construction, within its highly penal provisions; which is not admissible in statutes of a penal character. Dwarris on Stats. 736. And this construction would require him to have that done, pending the treaty for the sale, which the policy of the statute and its express terms require to be done only by the seller, when the sale is completed.

With these considerations in view, it is not an easy matter to

DECEMBER SPECIAL TERM, 1855.

Merrill v. Melchior.

come to a satisfactory conclusion, as to the particular duty which the purchaser is required to perform, and for the omission of which he must incur the heavy penalty of the statute. It is neither made his duty nor is it within his power, to have the certificate registered before the sale. The seller is only required to make the registry after the sale. What, then, is the duty of the purchaser, in view of the policy of the statute? He can do no more than to require the seller to produce to him the certificate, and, upon examination of it, and finding it to be in conformity to the statute, to rely upon the pledge of the seller, that after the sale is completed, he will have it registered, after making the affidavit required by the statute. If such had been the case, and after the sale the seller had failed to perform his duty, as required by law, or to comply with his agreement with the purchaser, it could not with any justice be said that the purchaser should be prejudiced by his delinquency, and especially that, in a matter of private right between the parties, growing out of the transaction, the seller by his own default, should render the contract illegal, and avail himself of that against the right of the purchaser. In such a case, the violation of law would be on the part of the seller, and the purchaser could not be said to be *in pari delicto* with him.

It is manifest, and admitted, that the seller has violated the law, in any view that can be taken of the statute, whether the certificate was required to be registered before or after the sale. The position of the purchaser is at least one of doubtful violation of law, and the rule is, that if a contract is susceptible of two interpretations, one legal and the other illegal, that interpretation shall be given to it which renders it valid, Chitty, Con. 659; and as he is shown to have sustained a loss in consequence of the illegal acts of the seller, it should not lie in the mouth of the seller to deny his right to recover, by involving him in the disabilities incident to a transaction clearly illegal as to himself, but of doubtful illegality as to the purchaser. They could not in this view be considered *in pari delicto*.

The record shows no further failure to comply with the requirements of the statute, than that there was no registry of the certificate in the probate clerk's office. It does not appear that the

plaintiffs in error had not the proper certificate before the sale, and that it was not submitted to the purchaser. If such was the case, it would be sufficient, under the view we take of the case, to absolve the purchaser from a participation in the illegal contract. And it was incumbent on the plaintiffs in error, to show that the certificate was not in their posssession, nor examined by the pur chaser; for every presumption is in favor of the legality of the transaction, and it is for the party alleging its illegality to show everything necessary to render it so, though the proof be of a negative character. Chitty, Con. 659, (6 Am. Ed); *Williams* v. *East India Co.*, 3 East, 192.

The decision of the court below was in accordance with these views of the subject, and we think it was correct.

Another error assigned is, that the court improperly awarded a writ of inquiry to assess the value of the property attached in the suit, the original jury which tried the cause having failed to do so. The action was by attachment, under the act of 1854, the second section of which provides, that where the property attached shall be replevied, the jury, if they find for the plaintiff, shall assess its value, and judgment shall be rendered against the defendant and his sureties. The verdict being for the plaintiff, but without an assessment of the value of the property attached, the court awarded a writ of inquiry, to be executed at the same time, which was done by another jury.

We think this was justified by the rule held in *Drane* v. *Hilzhiem*, 13 S. & M. 337; and the provision in the act of 1854, that the value shall be assessed by "the jury trying the issue between the parties," does not change the rule. This, of course, would be the regular and formal mode of assessing the value of the property. But it does not conclude the court of the power to have the value assessed by another legal jury at the same term that the jury which tried the cause have failed to perform a part of their office. The exercise of such a power was necessary to the administration of the law applicable to the case, and is. inherent in the court in fur-therance of justice. 2 Tidd, Pr. 922, note *n*, and cases cited.

The judgment is affirmed.