## RICHARD O'LEARY VS. JACOB ADLER.

1. VACANCIES: *Power of legislature to provide the mode of filling vacancies.*
   The constitution permits the legislature to provide the mode of filling vacancies in office only when the mode is not provided for in the constitution. If the constitution declares the mode, that is a limitation or prohibition on the legislature not to adopt a different one.

2. SAME: *Act of March 5, 1875.*
   This act creates the office of city judge of Vicksburg, and provides, that

until the next municipal election, the judge shall be appointed by the governor and the senate, and repeals all acts inconsistent with it. *Held*, that it must govern the mode of filling the office created by it.

3. SAME: *Sec.* 106, *Code of* 1871.

This statute requires the concurrence of the senate to appointments to terms about to expire, and to all vacancies which happen during the session of the senate. Appointments in vacation are limited to vacancies which then happen from casualty, and vacancies which happen during the last five days of the senate which arise from contingency. The words "vacancy occurring during the last five days of the session," imply that an incumbent has caused a vacancy by ceasing to hold the office, and does not include the idea of creating an office which never has had an incumbent, and construing the mere filling of the office as vacancy which has happened.

4. SAME: *Case in judgment.*

The act creating the office of city judge, and providing the mode of filling the office, was approved March 5, 1875. The senate adjourned March 6, 1875. On the 16th of March, 1875, the governor appointed a city judge of Vicksburg. *Held*, that the act creating the office provided the mode of filling it, and that the governor could not make an appointment to fill the office in the recess of the senate.

ERROR to the Circuit Court of *Warren* County.

Hon. GEO. F. BROWN, Judge.

Defendant in error presented his petition to the circuit court of Warren county, representing that on the 16th day of March, 1875, he was duly appointed city judge of the city of Vicksburg by the governer, and that he soon thereafter qualified himself as such. That one Richard O'Leary now usurps the said office, and excludes petitioner. The petition closes with the usual prayer in *quo warranto.*

Respondent demurred upon these grounds :

1. That the appointment is not shown to have been made with the consent of senate.

2. That the petition is not sued out in the name of the district attorney, who is not shown to have refused to sue out the writ.

The court overruled the demurrer and respondent filed an an-swer which denies that petitioner is a citizen of the United States,

denies his appointment and his right to the office, and denies that he usurps the office, and interposed a special plea, setting up his election in August, 1874, for two years. A demurrer to the special plea was filed and sustained by the court.

The case was tried April 17, 1875, and judgment rendered for relator, and that the respondent be ousted.

A motion was made for a new trial, which was overruled by the court, and the case comes to this court on writ of error.

The following are the assignments of error :

1. Defendants (in error) petition or information did not set out a good cause of action, and the court below erred in overruling plaintiff's (in error) demurrer to said petition.

2. The court erred in sustaining the demurrer of the defendant in error to the second plea of plaintiff in error.

3. The court erred in overruling the objections of plaintiff in error to the introduction and reading as testimony the paper marked exhibit " B."

4. The court erred in admitting the paper marked exhibit " A " as testimony, overruling the objections of plaintiff in error.

5. The court erred in admitting parol testimony to prove that defendant in error was a naturalized citizen of the United States, a matter required to be of record in the court where obtained.

6. The judgment of the court was contrary to the law and evidence in the case.

7. The court erred in overruling plaintiff's (in error) motion for a new trial.

*Warren Cowan*, for plaintiff in error :

The act was approved March 5, 1875. The power to appoint is conferred by sec. 5. This act must be strictly construed. Cooley Con. Lim., 3d ed., 194–5. The appointment can only be made in the manner prescribed ; that is, by the governor with the concurrence of the senate. The power of the governor, under Code of 1871, § 106, to appoint with the concurrence of the senate, has no application to this case. For construction, see Brady *v.* Howe, 50 Miss., 607. The act is local, not general. Cooley

Con. Lim., 3d ed., 389, 390; State *v.* County Commissioners of Baltimore, 29 Md., 516; Matter of Boyle, 9 Wis., 264. Defendant in error has not been legally appointed. Leachman *v.* Musgrove, 45 Miss., 536; Cooper *v.* Moore, 44 id., 386; Kimball *v.* Alcorn, 45 id., 157; Newsom *v.* Cocke, 44 id., 352. Defendant does not comply with the statute, he does not show a refusal on the part of the district attorney to commence these proceedings.

*W. F. Fitzgerald* and *Frank Johnston*, for defendant in error:

The office of city judge of Vicksburg was created by act of 1870, § 14, p. 350. It was made elective by § 16. It was abolished and the powers confered on the mayor March 31, 1874. By the last statute a new office was created, or what is the same thing, the office was revived or reëstablished. The mayor had no right to the office. The legislature had the power to create this office and to establish the court. Const., art. VI, sec. 24; and art. V. sec. 13, provides that all vacancies not provided for in the constitution shall be filled in such manner as the legislature may prescribe. Code of 1871, § 106.

SIMRALL, J., delivered the opinion of the court.

In the absence of a constitutional prohibition or limitation, the legislature may, at its discretion, abolish the municipal offices of a city, establish new ones and define their jurisdiction. It may also prescribe how the offices shall be filled, as by election or appointment; if in the latter mode, whether by the governor alone, or by him and the senate, or as the law may direct. The act of March 5, 1875, which gives rise to this controversy, created for Vicksburg the office of city judge, defined its jurisdiction, and declared that the judge should be appointed by the governor with the concurrence of the senate. For two years prior to the passage of this act, the jurisdiction conferred by it had pertained to the mayor of the city. The object of the statute is to withdraw from the mayor and vest it in the city judge. On the 16th of March last, Adler, the defendant in error, was appointed by the governor to the office, received his commission, took the oath; but O'Leary,

the mayor, declined to surrender.    Thereupon, he brought this
suit to recover the office.    It devolves upon the plaintiff in this
suit to show a complete right to the office.    The fifth section of
the act declares to the effect that the governor, with the advice
and consent of the senate, shall make the appointment, the ap-
pointee to hold until the next general election, when his successor
shall be elected.    The language is peculiar:    *    *    " The judge
of the city court be, and he is hereby, appointed by the governor
with the concurrence of the senate."    This, in connection with
section 106 of the code of 1871, is all the statute law supposed to
bear upon the subject.    Two sections of the constitution, the
13th, of art. V, and the 7th of art. XII, relate to filling vacancies
by the legislature.    These, in substance, authorize the legislature
to determine the mode of filling all vacancies in all offices not
otherwise provided for in the constitution.    The power of appoint-
ment to office and filling vacancies under these sections and the
statute of 1871, was considered at this term in the case of District
Attorney, etc., .v. Howe, 50 Miss., 607.    If the constitution has
declared the mode, as it has in several instances, that is a limita-
tion or prohibition on the legislature not to adopt another and dif-
ferent.    The legislative authority obtains under the sections re-
ferred to, when the constitution is silent as to the mode.    The
constitution authorizes the legislature to create inferior courts and
abolish them at pleasure.    The act of 1875 establishes an inferior
court, or restores one which for a time had been abrogated, and
confers upon the governor and senate the appointment of the
judge.    The office is made elective, beginning with the next gen-
eral election.    In the meantime it is appointive.    The proposition
may be stated in this formula :    The legislature establishes an
inferior court, and makes the judge thereof appointive by the gov-
ernor and senate.    Can the office be filled in any other mode?    If
the act had said, the judge shall be elected by the people, certainly
the governor and senate would not have had power to appoint.
It would seem that the special act which made the very case
should govern, unless there is some general statute, not incompat-

Oct. T. 1875.]          O'Leary vs. Adler.                    33

Opinion of the court.

ible with it, which should apply.    But the special act repeals all
former acts and parts of acts which are inconsistent with it.    If a
former statute had said, that in circumstances such as these, the
governor might appoint, would it not be incompatible with this
act, and repealed by it?    But can the appointment of Adler be
sustained by the general statute, sec. 106, Code of 1871?

That statute regulates the filling of office by appointment.    It
requires the concurrence of the senate to appointments to terms
about to expire, and to all vacancies which happen during the ses-
sion of the senate.    Appointments by the governor in vacation
are limited to vacancies which then happen (and as could not be
anticipated and were casual), " and vacancies which occur during
the last five days of the session," and which evidently (construed
in connection with the context) means those which arise from con-
tingency.

For the general rule declared is, that where a term is "about"
to expire, it must be filled by nomination and confirmation, be-
fore the vacancy occurs; so if the vacancy occurs during the ses-
sion, it must be filled in the same way.    It would be a plain
evasion of the statute if the term of an appointive officer would
expire within the last five days of the session of the senate, for the
governor to withhold his nomination, and make an appointment
in the recess.    That would be evasive of, and in conflict with, the
first clause of the section.

The words, " a vacancy occurring during the last five days of
the session," imply that an incumbent has caused a vacancy by
ceasing to hold the office, and does not include the idea of creat-
ing an office, which never has had an incumbent, and construing
the mere filling of the office as a vacancy which has happened.
Upon that theory, the creation of the office and the vacancy are
one and the same act; both are done *uno flatu.*    The words mean
that an existing office has become vacant within five days pre-
ceding the adjournment, and not that the statute may be passed
in one of those days establishing an office in which a " vacancy
has happened" in such sense as the governor may rightfully fill it.

The vacancy intended by the legislature is one which arises from contingency in an existing office. The language does not admit of the rendering which would embrace a newly created office, which never had an incumbent, and which, by the terms of the law, required the concurrent act of the executive and senate to fill it. Moreover, this office of city judge is declared to be elective. That is the regular and permanent plan of filling it.

In order to avoid the delay and expense of a special election, we may suppose the legislature authorized the governor and senate to appoint for the time or term anterior to the general municipal election. It is a local special case, provided for in the statute. The senate remained in session one or more days after the law was passed, and it was practicable to make the appointment by the governor and senate as specially directed. Adler, not having been appointed in that mode, it follows that he has no right to the office, unless authority to make an executive appointment in the recess of the senate can be derived from sec. 106 of the code. It must be observed that the constitution confers the appointing power upon the governor, separate from the senate, in but a single instance, to fill a vacancy on the supreme bench caused by death, resignation or removal. Sec. 5, art. 6. It is by virtue of statute law that the executive appoints to judgeships on the circuit and chancery bench in the recess of the senate. Express authority is conferred upon the legislature in two sections of the constitution to enact such laws. With the single exception above mentioned, the executive has no constitutional power to fill vacancies in any offices. When, therefore, he exerts such authority, it must be derived from a statute, and the conditions must exist on which the power depends. As we have seen, the act of the 5th of March does not empower the governor to appoint the city judge. The last clause of the 106th section of the code, only has reference to a casual vacancy, leaving an office which has been filled without an incumbent, and which has occurred within five days preceding the adjournment of the senate.

It follows that the governor had not the warrant of law to make the appointment.

The judgment is reversed, and the cause remanded for further proceedings, in accordance with this opinion.

TARBELL, J., dissenting.

In March last, Jacob Adler presented in the circuit court of Warren county, his petition, representing that on March 16, 1875, he was duly appointed and commissioned city judge of the city of Vicksburg, by the governor of Mississippi; that he took the oath of office March 18, 1875, and thereby became entitled to hold and exercise the office aforesaid; that Richard O'Leary unlawfully holds and usurps said office, and excludes petitioner therefrom; wherefore, he prays judgment, etc.

To this petition the respondent demurred, stating for cause:

1. That the appointment is not shown to have been with the concurrence of the senate.

2. That the petition is not sued out in the name of the district attorney, who is not shown to have refused to sue out the writ.

The demurrer was overruled, when respondent filed an answer, which denies that Adler is a citizen of the United States; denies that he was duly appointed to said office; denies his right to hold said office; and denies that respondent has usurped the same. And respondent pleads specially, that in August, 1874, he was elected mayor of Vicksburg and judge of the city court of said city for two years, for which term he is entitled to hold said office. A demurrer to the special plea was sustained. The cause was tried April 17, 1875, when judgment was rendered for the relator, and that respondent be ousted.

There was a motion for a new trial, on the following grounds:

1. Error in overruling demurrer to the petition.

2. In sustaining demurrer to special plea.

3. In overruling objection to the paper, Ex. "B.", as evidence.

4. In overruling objection to paper, Ex. "A.", as evidence.

5. In admitting parol testimony of a fact required to be of record by the laws of the United States.

6. Verdict and judgment contrary to law and evidence.

This motion was overruled, and thereupon a writ of error was prosecuted by O'Leary.

On the trial, Adler was sworn as a witness and testified that he had resided in Vicksburg ten years. The paper, Ex. "B.", was offered in evidence and objected to:

1. Because said paper was not the best evidence to prove the naturalization of Adler, being neither the original nor a copy of the original.

2. It does not purport to be the original or copy.

3. It is not a copy of the record of the court from which it purports to have issued, nor does it purport to be a copy of such record.

4. The paper is not a certificate made according to the form required by the laws of the United States, and is not competent testimony.

Ex. B. is a certificate of the naturalization of Adler in Rochester, New York. The certificate purports to have been issued by order of the court, and is signed by the clerk, under his official seal, or the seal of the county court of Monroe county, New York, a court of record of which the person signing the certificate, appears thereby to be clerk.

Adler then testified that he was the Jacob Adler referred to in the paper, Ex. B.; that he got his naturalization papers in 1854, in Monroe county, New York, and lost them during the war; that he applied by letter in 1871 to the clerk of the court in which he was naturalized, and received the paper, Ex. B., in reply. To this testimony, and to the paper, Ex. B., as evidence, respondent objected, but the objection was overruled.

The commission of the governor to Adler was then offered in evidence. This was objected to on the ground that it appeared upon its face to have been issued, and the appointment made by the governor, in the absence and without the concurrence of the senate, but the objection was overruled.

This is a full statement of the case. The following are assigned as errors: 1. In overruling the demurrer to the petition, which does not set out a good cause of action. 2. In sustaining the

demurrer to the second plea.    3. In overruling respondent's ob-
jection to the introduction of the paper, Ex. B., as evidence.
4. In admitting parol testimony to prove the naturalization of
Adler.    5. The judgment is contrary to the law and evidence.
6. The court erred in overruling the motion for a new trial.

The question underlying this whole case is, as to the power of
the legislature to legislate, as in this instance, of the supremacy of
the legislature over municipal corporations, to create, destroy, al-
ter or amend at will; as a general rule, the authorities are full
and explicit.    Grant on Corporations, 16–47 inclusive, side page;
Angell & Ames on Corporations, §§ 31, 767, and cases cited in
note.

The precise question involved was elaborately discussed and
determined in Purdy v. The People, 4 Hill, 384.    See also, People
v. Morris, 13 Wend., 325.

A distinction is taken between private and public corporations.
With reference to the latter, legislative supremacy, is much more
active and complete than in the former.    Angell & Ames on
Corporations, § 767 and cases in notes.

No question of prescription, ancient custom, long continued
recognition in practice, by statutes and constitution, can arise on
the facts.    This is not an attempt to deprive the mayor of any of
those duties and functions which immemorial usage attach to the
office, or even if it were, the power to add to or abridge those
duties by legislation, is not an open question.    See authorities,
*supra.*

But the legislation involved will be best understood by an
analysis of the act out of which this contest arises.    By the first
section it is provided that " the act conferring the duties and
powers of city judge upon the mayor be and the same are hereby
repealed."    The second section enacts " that the office of city
judge, city engineer, city auditor, established by the 7th section
of the act to which this is an amendment, be and the same is
hereby revived so far as relates to the office of city judge."    By
the third section it is enacted " that the office of city judge be and

the same is hereby revived." Section four defines the jurisdiction and duties of city judge. The court is to be considered constantly open. Jurisdiction extends to all cases arising under the ordinances of the city, and in criminal cases is concurrent with that of justices of the peace, arising within city limits. The judge is given power to administer oaths and take acknowledgment of deeds. Section five enacts "that the said judge of the city court be and he is hereby appointed by the governor with the concurrence of the senate, to continue in office until the next general election for said city, which officer shall then be elected by the qualified voters of said city." Section six enacts "that this act be in force and take effect after its passage, and all acts and parts of acts in conflict with this act, be and the same are hereby repealed." This act is entitled "an act amendatory to an act supplementary to an act amendatory of an act to revise the charter of the city of Vicksburg, approved April, 1873." Legislation with reference to the city of Vicksburg of a modern date is found in the laws of 1870, p. 344, ch. CXVII; id., p. 364, ch. CXVIII; laws of 1874, p. 148, ch. LXXXV; laws of 1875, approved March 5, 1875. The act of 1870 is entitled "an act to revise the charter and extend the corporate limits of the city of Vicksburg." Section thirteen of this act declares "that the mayor of said city shall be its chief executive officer, and shall have all the powers and perform all the duties usually belonging to such office." Section fourteen enacts "that there shall be a city judge, who shall hold a court to be known as the 'city court of Vicksburg;' * * . * and he shall have jurisdiction in all cases heretofore brought before the mayor's court, and shall have magisterial jurisdiction in the city."

Section one of the act of 1874 abolishes the office of city judge, and directs that its duties, "as now prescribed" (by the act of 1870) "shall be performed and discharged by the mayor of the city." The act of 1875 revives the office of city judge, and repeals the act of 1874, thus, retransfering the duties of city judge from the mayor to the judge of the city court.

That the legislation indicated is within the powers vested in the legislature, is not understood to be questioned in the argument, but counsel rest the case upon grounds which appear in the synopsis of the record heretofore given. The errors assigned will be noticed in their numerical order.

1. That the appointment of Adler without the consent of the senate was unauthorized. This is the basis of demurrer, and one of the grounds for a new trial, as it is also for the allegation that the petition does not, on its face, contain sufficient to authorize a judgment in favor of the petitioner. The examination of the papers shows that the point of objection to the petition rests upon the fact of the appointment without the concurrence of the senate. It is claimed that this case falls literally within the provisions of the code, § 106. After disposing of the other points raised, the power of the governor to make the appointment in the case at bar, without the concurrence of the senate, will be considered.

2. Under the legislative power to alter or amend the charter of the city, and in view of such legislation, the second plea of the respondent constituted no sufficient answer to the petition. Hence, the demurrer hereto was properly sustained.

3. As to the question of naturalization, there are several views to be taken: 1. The act of 1875 divested the mayor of all right to sit as judge in the city court. 2. The petition and exhibits presented a *prima facie* right in Adler. Evidence was required to negative or overcome the *prima facie* right thus shown. 1 How., 121; 30 Miss., 516; 33 id., 292. Excluding the evidence offered by Adler, therefore, he was still entitled to judgment. But having testified to the loss of his certificate, secondary evidence of his naturalization was admissible. 1 Greenl., § 509. This secondary evidence consisted of his own testimony as to his naturalization, and also an exemplification or transcript of the record of naturalization, certified as hereinbefore stated. 1. This evidence was unnecessary to sustain the claim of Adler; the court, however, did not err under the circumstances. Greenl. on Ev., § 84,

note 2.   2. The method prescribed by the United States statutes, is not the exclusive mode of proving naturalization. 2 Yeates, 532; 1 Greenl., § 505. 3. The issue of naturalization was with the respondent as the case stood.

4. The commission of the governor was proper evidence.

5. The fifth assignment of error is answered under the third subdivision above.

6. The sixth assignment of error is, that the judgment is contrary to the law and the evidence. To this there are two answers: 1. The statute of 1875 divested the mayor of all right to exercise or discharge the duties of city judge. He is utterly without right in acting as such, and is a naked trespasser in every case over which he assumes jurisdiction. For every arrest he is liable to an action for false imprisonment. 2. Adler, at least, made out a *prima facie* right, and was entitled to judgment.

7. The last error assigned is to the action of the court in overruling the motion for a new trial. The several grounds for that motion have all been considered in the foregoing reference to the errors assigned.

Two other points made in this case may be referred to:

1. As to an *interregnum* in the office or duties of city judge, the the case at bar is distinguishable from Leachman *v.* Musgrove, 45 Miss., 536, and Cooper *v.* Moore, 44 id., 391, as those cases are sought to justify the mayor in acting as city judge.

2. It is urged that the act of 1875 did not take effect until sixty days from its passage. This is not understood to be involved by the pleadings, though it is referred to in argument. The statute, on its face, is to take effect "after its passage." Manifestly, however, the words, "from and," were omitted by clerical mistake. The act was clearly intended, however, to take effect "from and after" its passage.

It will be observed that the objection to the claim of Adler rests upon grounds of a purely technical character. Of the legislative control over the office and duties involved, there cannot be, and is not, but one opinion. Upon the merits: Adler is unques-

tionably entitled to judgment, unless, upon the facts, the appoint-
ment in this case, without the advice and consent of the senate,
was unauthorized.    The question thus presented was considered
by this court in Howe v. Brady, Dist. Atty., MSS. Op.    In that
case the appointment of a chancellor was involved.    Const., art.
6, §§ 2, 5, 11, 17; art. 12, § 7.    His term of office expired in
July.    The appointment was made soon thereafter, in the absence
of the senate.    According to the code, § 106, the term of this
office was "about to expire" during the next previous session of
the legislature, and by the provisions of the statute should have
been submitted to the senate during that session, or the senate
ought to have been convened as provided in the code, § 107.    In
the case at bar, the vacancy occurred during the last five days of
the session of the legislature, and by the express language of the
statute (Code, § 106) is excepted from the rule prohibiting ap-
pointments in the absence of the senate.    The terms of this stat-
ute and the opinion of the court in Howe v. Brady, Dist. Atty.,
expressly coincide.

The code, § 106, provides as follows:  1. For appointments,
with the advice and consent of the senate, when the term of the
incumbent is "about to expire."  2. By the approval of the sen-
ate to fill vacancies occurring from any cause during the session
of that body.  3. To fill all vacancies occurring from any cause
during the vacation of the senate.  4. Also, in all vacancies not
otherwise filled by law.    But all appointments requiring the ac-
tion of the senate shall be reported to that body within ten days
after the commencement of the next session.  5. No vacancy
caused by the refusal of the senate to confirm any appointment
shall be filled in vacation, unless occurring during the last five
days of the session.  6. Vacancies not occurring during the last
five days of the session, shall not be filled in vacation without the
consent of the senate ; or, in other words, vacancies occurring du-
ring the last five days of the session may be filled in vacation
without consulting the senate, but they must be reported to that
body within ten days after the commencement of the next session.

Howe *v.* Brady, *supra.*   Is the vacancy in the case at bar within
the statute quoted?    The answer to this question is not only
found in the plain letter of the code, but is affirmed in Howe *v.*
Brady.

From the case cited, the following unequivocal quotations are
made : " Clearly the governor cannot appoint to a vacancy which
happens during the session of the senate without its concurrence,
unless, as provided in the last clause of the section (Code, § 106),
it took place during the last five days of the session.   *   *   *

" *First.* If the office is about to be vacant by expiration of the
term, the governor must send his nomination to the senate for its
advice and consent.    The impending vacancy will occur at a time
certain, and is in no manner contingent.

" *Second.* If the vacancy from any cause takes place during the
session of the senate, an appointment must be made by the gover-
nor and senate, unless it is covered by the last clause of the sec-
tion."    Code, § 106.

Again : " *First.* A term of the chancellor which will expire in the
vacation of the senate, must be filled by a nomination by the
governor to the senate, and a confirmation at the session preced-
ing its termination.

" *Second.* Vacancies which arise from the ending of the term, or
from casualty during the session of the senate, must be then filled
by the governor and senate, unless a vacancy   *   *   occurs dur-
ing the last five days of the session.

" *Third.* If the senate refuses to confirm an appointment or
nomination, the governor shall not fill such a vacancy in vacation
unless it happened within five days before the senate adjourned."
See Const., art. 6, secs. 5, 11, 17, 21 ; id., art. 5, secs. 12, 13 ; id.,
art. 12, sec. 7.

Art. 6, sec. 24, provides that " the legislature shall, from time
to time, establish such inferior courts as may be necessary, and
abolish the same whenever they shall deem it expedient."   Under
this clause of the constitution the legislature has created and
abolished the office of city judge of Vicksburg ; transferred the

duties to the mayor; repealed the transfer, and restored the office of city judge, at will.

It is certain that the mayor is without authority to hold these courts. The right of Adler can be disputed only upon one of two grounds: 1. That the Code, § 106, is repealed by the act under which the relator claims; or, 2. That the vacancy in the case at bar is not of the character contemplated by the statute cited; in other words, that the code embraces only vacancies by death, resignation, removal, or other casualty, and not a vacancy created by statute or operation of law.

There is some plausibility in the argument in support of the first point stated, but the other is a dilemma of absurdity. Neither is of sufficient merit to be seriously discussed.

There should be judgment for the relator.